Ramon Rossi Lopez, Bar No. 86361
Matthew Ramon Lopez, Bar No. 263134
**LOPEZ McHUGH LLP**
100 Bayview Circle, Suite 5600
Newport Beach, CA 92660
Telephone: (949) 737-1501
Facsimile: (949) 737-1504
rlopez@lopezmchugh.com
mlopez@lopezmchugh.com

Attorneys for Plaintiff, JOSEPH MYERS

FILED
2014 FEB 26 PM 2:10
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA
BY_____

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH MYERS, an Individual,<br><br>    Plaintiff,<br><br>vs.<br><br>AUXILIUM PHARMACEUTICALS, INC. a corporation; and DOES 1 through 10,<br><br>    Defendants. | Case No.:<br>Judge:<br>Department: **SACV14-00278 CJC (DFMx)**<br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY TRIAL DEMANDED** |

COMES NOW, the Plaintiff, Joseph Myers, by and through his undersigned counsel, and for his causes of action, hereby sues the Defendant, Auxilium Pharmaceuticals, Inc., and alleges as follows:

**INTRODUCTION**

1. This case involves the prescription drug Testim®, which is manufactured, sold, distributed and promoted by Defendant Auxilium Pharmaceuticals, Inc. as a testosterone replacement therapy.

2. Defendant misrepresented that Testim ® is a safe and effective treatment for hypogonadism or "low testosterone," when in fact this drug causes serious medical problems, including

-1-

COMPLAINT

life threatening cardiac events, strokes, and thrombolytic events.

3. Defendant engaged in aggressive, award-winning direct-to-consumer and physician marketing and advertising campaigns for Testim®. Further, Defendant engaged in an aggressive unbranded "disease awareness" campaign to alert men that they might be suffering from "Low T."

4. As a result, diagnoses of Low T have increase exponentially. This has directly related to Testim's sales increasing to over $209 million per year.

5. However, consumers of Testim were misled as to the drug's safety and efficacy, and as a result have suffered injuries including life-threatening cardiac events, strokes and thrombolytic events.

## PARTIES

6. Plaintiff Joseph Myers (hereinafter "Plaintiff") is, and was at all times relevant hereto, a resident and citizen of Orange County, California. He currently resides in Fullerton, California. At the time Joseph was injured by his use of Testim®, he resided in Fullerton, California.

7. Defendant Auxilium Pharmaceuticals, Inc. (hereinafter "Auxilium" or "Defendant") is a Delaware corporation which has its principal place of business at 640 Lee Road, Chesterbrook, Pennsylvania 19087. Auxilium may be served at CT Corporation System, 818 W Seventh St., Los Angeles, California. Auxilium has conducted business and derived substantial revenue from within the State of California.

8. At all times relevant to this Complaint, the Defendant was engaged in the business of designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, the prescription testosterone drug sold under the name Testim®, throughout the State of California.

9. The true names and capacities of those Defendants designated as DOES 1 through 10, whether individual, corporate, associate or otherwise, are unknown to Plaintiff at the time of filing this Complaint and Plaintiff, therefore, sues said Defendants by such fictitious names and will ask leave of Court to amend this Complaint to show their true names or capacities when the same have been ascertained. Plaintiff is informed and believes, and thereon alleges, that each of the DOE Defendants is, in some manner, responsible for the events and happenings herein set forth and proximately caused

injury and damages to Plaintiff as herein alleged.

## JURISDICTION AND VENUE

10. Subject matter of this action arises under 28 U.S.C. § 1332. The parties are citizens of different states and the amount in controversy between the parties exceeds the sum of $75,000.00, exclusive of interest and costs.

11. Venue is proper in the U.S. District Court for the Central District of California, pursuant to 28 U.S.C. § 1391, because, inter alia, Plaintiff was prescribed Testim, ingested Testim, and suffered a stroke and pulmonary embolism in Orange County, California, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in, and because the Defendant transacts business in California.

12. The U.S. District Court for the Central District of California has personal jurisdiction over the Defendant because the Defendant transacts business in and the wrongs complained of herein arose in California

13. This Court has supplemental jurisdiction over the remaining common law and state claims pursuant to 28 U.S.C. § 1367.

## GENERAL ALLEGATIONS

14. This action is brought on behalf of Plaintiff who was prescribed and supplied with, received and who has taken and applied the prescription drug Testim, as tested, studied, researched, evaluated, endorsed, designed, formulated, compounded, manufactured, produced, processed, assembled, inspected, distributed, marketed, labeled, promoted, packaged, advertised for sale, prescribed, sold or otherwise placed in the stream of interstate commerce by Defendant. This action seeks, among other relief, general and special damages and equitable relief in order to enable Plaintiff to treat and monitor the dangerous, severe and life-threatening side effects caused by Testim.

15. Defendant's wrongful acts, omissions, and fraudulent misrepresentations caused Plaintiff's injuries and damages.

16. At all times herein mentioned, the Defendant was engaged in the business of research, licensing, designing, formulating, compounding, testing, manufacturing, producing, processing,

assembling, inspecting, distributing, marketing, labeling, promoting, packaging and/or advertising for sale or selling the prescription drug Testim for the use and application by Plaintiff.

17. At all times herein mentioned, Defendant was authorized to do business within the state of residence of Plaintiff.

18. At all times herein mentioned, the officers and directors of Defendant participated in, authorized, and directed the production and promotion of the aforementioned product when they knew, or with the exercise of reasonable care should have known, of the hazards and dangerous propensities of said product and thereby actively participated in the tortious conduct which resulted in the injuries suffered by Plaintiff herein.

19. Plaintiff files this lawsuit within the applicable limitations period of first suspecting that said drugs caused the appreciable harm sustained by Plaintiff. Plaintiff could not, by the exercise of reasonable diligence, have discovered the wrongful case of Plaintiff's injuries at an earlier time because the injuries were caused without perceptible trauma or harm, and when Plaintiff's injuries were discovered their cause was unknown to Plaintiff. Plaintiff did not suspect, nor did Plaintiff have reason to suspect, that Plaintiff had been injured, the cause of the injuries, or the tortious nature of the conduct causing the injuries, until less than the applicable limitations period prior to the filing of this action. Additionally, Plaintiff was prevented from discovering this information sooner because Defendant herein misrepresented and continues to misrepresent to the public and to the medical profession that their testosterone drugs are safe and free from serious side effects, and Defendant has fraudulently concealed facts and information that could have led Plaintiff to discover a potential cause of action.

## **OVERVIEW**

20. Hypogonadism is a specific condition of the sex glands, which in men may involve the diminished production or nonproduction of testosterone.

21. A study published in the Journal of the American Medical Association ("JAMA") in August 2013 entitled "Trends in Androgen Prescribing in the United States, 2001-2011" indicated that many men who get testosterone prescriptions have no evidence of hypogonadism. For example, one third of men prescribed testosterone had a diagnosis of fatigue, and one quarter of men did not even

1  have their testosterone levels tested before they received a testosterone prescription.

2      22.    Defendant coordinated massive advertising campaigns designed to convince men that they suffered from low testosterone. Defendant orchestrated national disease awareness media blitzes that purported to educate male consumers about the signs of low testosterone. The marketing campaigns included promotional literature placed in healthcare providers' offices and distributed to potential testosterone users, and online media.

    23.    The advertisements suggest that various symptoms often associated with other conditions may be caused by low testosterone and encourage men to discuss testosterone replacement therapy with their doctors if they experienced any of the "symptoms" of low testosterone. These "symptoms" include listlessness, increased body fat, and moodiness—all general symptoms that are often a result of aging, weight gain, or lifestyle, rather than low testosterone.

    24.    Defendant also sought to convince primary care physicians that low testosterone levels are widely under-diagnosed, and that conditions associated with normal aging could be caused by low testosterone levels.

    25.    While running disease awareness campaigns, Defendant promotes their product, Testim, as an easy to use topical testosterone replacement therapies. Defendant contrasts their products' at-home topical application with less convenient prescription testosterone injections, which require frequent doctor visits.

    26.    Defendant convinced millions of men to discuss testosterone replacement therapy with their doctors, and consumers and their physicians relied on Defendant's promises of safety and ease. Although prescription testosterone replacement therapy had been available for years, millions of men who had never been prescribed testosterone flocked to their doctors and pharmacies.

    27.    What consumers received, however, were not safe drugs, but products which cause life-threatening problems, including strokes and heart attacks.

    28.    Defendant's advertising paid off in. Sales of replacement therapies have more than doubled since 2006, and are expected to triple to $5 billion by 2017, according to forecasts by Global Industry Analysts.  Shannon Pettypiece, *Are Testosterone Drugs the Next Viagra?*, May 10, 2012,

Bloomberg Businessweek, *available at:* http://www.businessweek.com/articles/2012-05-10/are-testosterone-drugs-the-next-viagra.

29. The Defendant's marketing program sought to create the image and belief by consumers and physicians that low testosterone affected a large number of men in the United States and that the use of testosterone is safe for human use, even though Defendant knew these to be false, and even though Defendant had no reasonable grounds to believe them to be true

30. There have been a number of studies concluding that testosterone therapy causes a sudden increase in hematocrit, hemoglobin and estradiol, and associating its use with increased the risk of heart attacks and strokes.

31. In 2010, a New England Journal of Medicine Study entitled "Adverse Events Associated with Testosterone Administration" was discontinued after an exceedingly high number of men in the testosterone group were suffered adverse events.

32. In November of 2013, a JAMA study was released entitled "Association of Testosterone Therapy with Mortality, Myocardial Infarction, and Stroke in Men with Low Testosterone Levels" which indicated that testosterone therapy raised the risk of death, heart attack and stroke by about 30%.

33. On January 29, 2014, a study was released in PLOS ONE entitled "Increased Risk of Non-Fatal Myocardial Infarction Following Testosterone Therapy Prescription in Men" which indicated that testosterone use doubled the risk of heart attacks in men over sixty five years old and men younger than sixty five with a previous diagnosis of heart disease.

**FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

34. The Food and Drug Administration approved Testim on October 31, 2002 for the treatment of adult males who have low or no testosterone. After FDA approval, Testim was widely advertised and marketed by Defendant as a safe and effective testosterone replacement therapy.

35. Testim is a hydroalcoholic gel containing testosterone. Testim is applied to the shoulders and upper arms. Testim enters the body through transdermal absorption.

36. Testosterone is a primary androgenic hormone responsible for normal growth, development of the male sex organs, and maintenance of secondary sex characteristics.

37. The hormone plays a role in sperm production, fat distribution, maintenance of muscle strength and mass, and sex drive.

38. In men, testosterone levels normally begin a gradual decline after the age of thirty.

39. The average testosterone levels for most men range from 300 to 1,000 nanograms per deciliter of blood. However, testosterone levels can fluctuate greatly depending on many factors, including sleep, time of day, and medication. Resultantly, many men who fall into the hypogonadal range one day will have normal testosterone levels the next.

40. Testim may produce undesirable side effects to patients who use the drugs, including but not limited to, myocardial infarction, stroke, and death.

41. In some patient populations, Testim use may increase the incidence of myocardial infarctions and death by over 500%.

42. In addition to the above, Testim has been linked to several severe and life changing medical disorders in both users and those who come into physical contact with users or the unwashed clothes of someone who applied testosterone. Patients taking testosterone may experience enlarged prostates and increased serum prostate-specific antigen levels.

43. Secondary exposure to testosterone can cause side effects in others. In 2009 the FDA issued a black box warning for testosterone prescriptions, advising patients of reported virilization in children who were secondarily exposed to the gel. Testosterone may also cause physical changes in women exposed to the drug and cause fetal damage with pregnant women who come into secondary contact with testosterone.

44. Defendant's marketing strategy beginning in 2000 has been to aggressively market and sell their products by misleading potential users about the prevalence and symptoms of low testosterone and by failing to protect users from serious dangers that Defendant knew or should have known to result from use of its products.

45. Defendant successfully marketed testosterone by undertaking a "disease awareness" marketing campaigns. These campaigns sought to create a consumer perception that low testosterone is prevalent among U.S. men and that symptoms previously associated with other physical and mental

conditions, such as aging, stress, depression, and lethargy were actually attributable to "Low-T."

46. Defendant's advertising programs sought to create the image and belief by consumers and their physicians that the use of testosterone was a safe method of alleviating their symptoms, had few side effects and would not interfere with their daily lives, even though Defendant knew or should have known these to be false, and even though the Defendant had no reasonable grounds to believe them to be true.

47. Defendant purposefully downplayed, understated and outright ignored the health hazards and risks associated with using testosterone. Defendant deceived potential testosterone users by relaying positive information through the press, including testimonials from retired professional athletes, and manipulating hypogonadism statistics to suggest widespread disease prevalence, while downplaying known adverse and serious health effects.

48. In particular, in the warnings Defendant give in their commercials, online and print advertisements, Defendant fails to mention any potential cardiac or stroke side effects and falsely represents that Defendant adequately tested testosterone for all likely side effects. concealed material relevant information from potential testosterone users and minimized user and prescriber concern regarding the safety of testosterone.

49. As a result of Defendant's advertising and marketing, and representations about their products, men in the United States pervasively seek out prescriptions for testosterone.  If Plaintiff in this action had known the risks and dangers associated with testosterone, Plaintiff would not have taken testosterone and consequently would not have been subject to its serious side effects.

## SPECIFIC FACTUAL ALLEGATIONS

50. Plaintiff Joseph Myers was 56 years old when he was prescribed and used Testim as directed for symptoms he attributed to low testosterone as a result of Defendant's advertisements.

51. After taking multiple doses of Testim, on or about February 27, 2012, Plaintiff Joseph Myers suffered a stroke.

52. On March 1, 2012, Plaintiff was informed by his physicians that they believed his stroke was caused by his use of Testim.

1  53.  Prior to March 1, 2012, Plaintiff Joseph Myers was unaware of any connection between his use of Testim and his stroke.

54.  The Testim Plaintiff Joseph Myers consumed caused physical and emotional impairment which affected his personal and professional life. As a result of the stroke, Plaintiff Joseph Myers has memory loss and must now undergo oxygen therapy 24 hours per day.

55.  Prior to using Testim, Plaintiff Joseph Myers had no history of blood clots, strokes or significant cardiovascular problems.

56.  Plaintiff incurred significant medical expenses as a result of the treatment he underwent to treat his stroke, will incur future medical expenses as his injury is permanent, lost wages as a result of being unable to work, his ability to labor and earn money has been impaired, he is at increased risk for future health problems and disability, and he suffered physical pain and mental anguish.

57.  Had Defendant properly disclosed the risks associated with Testim, Plaintiff would have avoided the risk of stroke by either not using testosterone at all, severely limiting the dosage and length of use, and/or by closely monitoring the degree to which the drugs were adversely affecting his health.

**FIRST CAUSE OF ACTION**

**STRICT PRODUCTS LIABILITY – DEFECT DUE TO INADEQUATE WARNING**

58.  Plaintiff adopts by reference each and every paragraph of the Complaint applicable to all counts of this Complaint, and each and every count of this Complaint as if fully copied and set forth at length herein.

59.  The Defendant is liable under the theory of product liability as set forth in §§ 402A and 402B of the Restatement of Torts 2d.

60.  The Testim manufactured and/or supplied by Defendant was defective due to inadequate warnings or instructions because after the Defendant knew or should have known of the risk of serious bodily harm from the use of Testim, the Defendant failed to provide an adequate warning to consumers and/or their health care providers of such risks, knowing Testim could cause serious injury.

61.  Defendant failed to adequately warn consumers and/or their health care providers that Testim could cause increased hematocrit levels that could cause heart attacks, strokes, pulmonary

embolisms, cardiovascular events and blood clots.

62. Defendant failed to adequately warn consumers and/or their health care providers that while a patient was taking Testim it was necessary to frequently monitor hematocrit levels to prevent heart attacks, strokes, pulmonary embolisms, cardiovascular events and blood clots.

63. The Testim manufactured and/or supplied by Defendant was defective due to inadequate post-marketing warnings or instructions because, after Defendant knew or should have known of the risk of serious bodily harm from the use of Testim, Defendant failed to provide an adequate warning to consumers and/or their health care providers of the product, knowing the product could cause serious injury.

64. As a direct and proximate result of Plaintiff's reasonably anticipated use of Testim as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendant, Plaintiff suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses in the future.

## SECOND CAUSE OF ACTION
## NEGLIGENCE

65. Plaintiff adopts by reference each and every paragraph of the Complaint applicable to all counts of this Complaint, and each and every count of this Complaint as if fully copied and set forth at length herein.

66. At all times herein mentioned, Defendant had a duty to properly manufacture, design, formulate, compound, test, produce, process, assemble, inspect, research, distribute, market, label, package, distribute, prepare for use, sell, prescribe and adequately warn of the risks and dangers of Testim.

67. At all times herein mentioned, Defendant negligently and carelessly manufactured, designed, formulated, distributed, compounded, produced, processed, assembled, inspected, distributed, marketed, labeled, packaged, prepared for use and sold Testim and failed to adequately test and warn of the risks and dangers of Testim.

68. Despite the fact that Defendant knew or should have known that Testim caused unreasonable, dangerous side effects, Defendant continued to market Testim to consumers including Plaintiff, when there were safer alternative methods and/or no need to treat conditions such as loss of energy, libido erectile dysfunction, depression, loss of muscle mass and other conditions that Testim marketing materials claim are caused by "Low T".

69. Defendant knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of Defendant's failure to exercise ordinary care as described above.

70. Defendant's negligence was a proximate cause of the Plaintiff's injuries, harm and economic loss which Plaintiff suffered, and will continue to suffer, as described and prayed for herein.

## THIRD CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY

71. Plaintiff adopts by reference each and every paragraph of the Complaint applicable to all counts of this Complaint, and each and every count of this Complaint as if fully copied and set forth at length herein.

72. Prior to the time that the aforementioned products were used by the Plaintiff, Defendant impliedly warranted to Plaintiff and Plaintiff's agents and physicians that Testim was of merchantable quality and safe and fit for the use for which it was intended.

73. Plaintiff was and is unskilled in the research, design and manufacture of medical drugs, including Testim, and reasonably relied entirely on the skill, judgment and implied warranty of the Defendant in using Testim.

74. Testim was neither safe for its intended use nor of merchantable quality, as warranted by Defendant, in that Testim has dangerous propensities when used as intended and will cause severe injuries to users.

75. As a result of the abovementioned breach of implied warranties by Defendant, Plaintiff suffered injuries and damages as alleged herein.

///

///

## FOURTH CAUSE OF ACTION

## BREACH OF EXPRESS WARRANTY

76. Plaintiff adopts by reference each and every paragraph of the Complaint applicable to all counts of this Complaint, and each and every count of this Complaint as if fully copied and set forth at length herein.

77. At all times mentioned, Defendant expressly represented and warranted to Plaintiff and Plaintiff's agents and physicians, by and through statements made by Defendant or their authorized agents or sales representatives, orally and in publications, package inserts and other written materials intended for physicians, medical patients and the general public, that Testim is safe, effective, fit and proper for its intended use. Plaintiff purchased Testim relying upon these warranties.

78. In utilizing Testim, Plaintiff relied on the skill, judgment, representations, and foregoing express warranties of Defendant. These warranties and representations were false in that Testim is unsafe and unfit for its intended uses.

79. As a result of the abovementioned breach of express warranties by Defendant, Plaintiff suffered injuries and damages as alleged herein.

## FIFTH CAUSE OF ACTION

## FRAUD

80. Plaintiff adopts by reference each and every paragraph of the Complaint applicable to all counts of this Complaint, and each and every count of this Complaint as if fully copied and set forth at length herein.

81. Defendant, from the time they first tested, studied, researched, evaluated, endorsed, manufactured, marketed and distributed Testim, and up to the present, willfully deceived Plaintiff by concealing from them, Plaintiff's physicians and the general public, the true facts concerning Testim, which the Defendant had a duty to disclose.

82. At all times herein mentioned, Defendant conducted a sales and marketing campaign to promote the sale of Testim and willfully deceive Plaintiff, Plaintiff's physicians and the general public as to the benefits, health risks and consequences of using Testim. Defendant knew of the foregoing, that

Testim is not safe, fit and effective for human consumption, that using Testim is hazardous to health, and that Testim has a serious propensity to cause serious injuries to its users, including but not limited to the injuries Plaintiff suffered.

83. Defendant concealed and suppressed the true facts concerning Testim with the intent to defraud Plaintiff, in that Defendant knew that Plaintiff physicians would not prescribe Testim, and Plaintiff would not have used Testim, if they were aware of the true facts concerning its dangers.

84. As a result of Defendant's fraudulent and deceitful conduct, Plaintiff suffered injuries and damages as alleged herein.

## SIXTH CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION

85. Plaintiff adopts by reference each and every paragraph of the Complaint applicable to all counts of this Complaint, and each and every count of this Complaint as if fully copied and set forth at length herein.

86. From the time Testim was first tested, studied, researched, evaluated, endorsed, manufactured, marketed and distributed, and up to the present, Defendant made misrepresentations to Plaintiff, Plaintiff's physicians and the general public, including but not limited to the misrepresentation that Testim was safe, fit and effective for human consumption. At all times mentioned, Defendant conducted a sales and marketing campaign to promote the sale of Testim and willfully deceive Plaintiff, Plaintiff's physicians and the general public as to the health risks and consequences of the use of the abovementioned product.

87. The Defendant made the foregoing representation without any reasonable ground for believing them to be true. These representations were made directly by Defendant, by sales representatives and other authorized agents of Defendant, and in publications and other written materials directed to physicians, medical patients and the public, with the intention of inducing reliance and the prescription, purchase and use of the subject product.

88. The representations by the Defendant were in fact false, in that Testiml is not safe, fit and effective for human consumption, using Testim is hazardous to health, and Testim has a serious

propensity to cause serious injuries to users, including but not limited to the injuries suffered by Plaintiff.

89. The foregoing representations by Defendant, and each of them, were made with the intention of inducing reliance and the prescription, purchase and use of Testim.

90. In reliance of the misrepresentations by the Defendant, and each of them, Plaintiff was induced to purchase and use Testim. If Plaintiff had known of the true facts and the facts concealed by the Defendant, Plaintiff would not have used Testim. The reliance of Plaintiff upon Defendant's misrepresentations was justified because such misrepresentations were made and conducted by individuals and entities that were in a position to know the true facts.

91. As a result of the foregoing negligent misrepresentations by Defendant, Plaintiff suffered injuries and damages as alleged herein.

## PUNITIVE DAMAGES ALLEGATIONS

92. Plaintiff adopts by reference each and every paragraph of the Complaint applicable to all counts of this Complaint, and each and every count of this Complaint as if fully copied and set forth at length herein.

93. The acts, conduct, and omissions of Defendant, as alleged throughout this Complaint were willful and malicious. Defendant committed these acts with a conscious disregard for the rights of Plaintiff and other Testim users and for the primary purpose of increasing Defendant's profits from the sale and distribution of Testim. Defendant's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages against Defendant in an amount appropriate to punish and make an example of Defendant.

94. Prior to the manufacturing, sale, and distribution of Testim, Defendants knew that said medication was in a defective condition as previously described herein and knew that those who were prescribed the medication would experience and did experience severe physical, mental, and emotional injuries. Further, Defendant, through their officers, directors, managers, and agents, knew that the medication presented a substantial and unreasonable risk of harm to the public, including Plaintiff and as such, Defendant unreasonably subjected consumers of said drugs to risk of injury or death from using

Testim.

95. Despite its knowledge, Defendant, acting through its officers, directors and managing agents for the purpose of enhancing Defendant's profits, knowingly and deliberately failed to remedy the known defects in Testim and failed to warn the public, including Plaintiff, of the extreme risk of injury occasioned by said defects inherent in Testim. Defendant and their agents, officers, and directors intentionally proceeded with the manufacturing, sale, and distribution and marketing of Testim knowing these actions would expose persons to serious danger in order to advance Defendant's pecuniary interest and monetary profits.

96. Defendant's conduct constitutes gross negligence and demonstrates a reckless disregard for the lives, safety and health of others, entitling the Plaintiff to an award of punitive damages pursuant to Civil Code section 3294.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays for judgment against the Defendant, as follows, as appropriate to each cause of action alleged and as appropriate to the particular standing of Plaintiff:

A. General damages in an amount that will conform to proof at time of trial;

B. Special damages in an amount within the jurisdiction of this Court and according to proof at the time of trial;

C. Loss of earnings and impaired earning capacity according to proof at the time of trial;

D. Medical expenses, past and future, according to proof at the time of trial;

E. For past and future mental and emotional distress, according to proof;

F. For punitive or exemplary damages according to proof;

G. Restitution, disgorgement of profits, and other equitable relief;

H. Injunctive relief;

I. Attorney's fees;

J. For costs of suit incurred herein;

K. For pre-judgment interest as provided by law; and

L. For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all claims so triable in this action.

DATED: February 26, 2014          Respectfully Submitted,

*/s/ Matthew R. Lopez*

Ramon Rossi Lopez, Bar No. 86361
Matthew Ramon Lopez, Bar No. 263134
**LOPEZ MCHUGH LLP**
100 Bayview Circle
Suite 5600
Newport Beach, California 92660
Tel. 949.737.1501
Facsimile 949.737.1504
rlopez@lopezmchugh.com
mlopez@lopezmchugh.com

Ronald E. Johnson, Jr. (KY 88302)
Sarah N. Lynch (KY 94261)
**SCHACHTER, HENDY & JOHNSON, P.S.C.**
909 Wright's Summit Parkway #210
Ft. Wright, Kentucky 41011
Tel. 859.578.4444
Facsimile 859.578.4440
rjohnson@pschachter.com
slynch@pschachter.com
(Application for Admission *pro hac vice* to be filed)

Joseph M. Lyon (OH 0076050)
**THE LYON FIRM**
22 West 9th
Cincinnati, Ohio 45202
Tel. 513.381.2333
jlyon@thelyonfirm.com
(Application for Admission *pro hac vice* to be filed)

Attorneys for Plaintiff, JOSEPH MYERS

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )
JOSEPH MYERS, an Individual

**DEFENDANTS** ( Check box if you are representing yourself ☐ )
AUXILIUM PHARMACEUTICALS, INC. a corporation; and DOES 1 through 10

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Ramon Rossi Lopez, Bar No. 86361, Matthew Ramon Lopez, Bar No. 263134,
Lopez McHugh LLP
100 Bayview Circle, Ste. 5600, Newport Beach, CA 92660, (949) 737-1501

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)
- ☐ 1. U.S. Government Plaintiff
- ☐ 2. U.S. Government Defendant
- ☐ 3. Federal Question (U.S. Government Not a Party)
- ☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)
- ☒ 1. Original Proceeding
- ☐ 2. Removed from State Court
- ☐ 3. Remanded from Appellate Court
- ☐ 4. Reinstated or Reopened
- ☐ 5. Transferred from Another District (Specify)
- ☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)
**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No   ☐ **MONEY DEMANDED IN COMPLAINT:** $ _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. 1332(a)
Personal Injury Product Liability Litigation

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | ☐ 196 Franchise | ☐ 362 Personal Injury-Med Malpratice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | **REAL PROPERTY** | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 210 Land Condemnation | ☒ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 220 Foreclosure | | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

FOR OFFICE USE ONLY: Case Number: **SACV14-00278 CJC (DFMx)**

AFTER COMPLETING PAGE 1 OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED ON PAGE 2.

CV-71 (02/13)    CIVIL COVER SHEET    Page 1 of 2

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ NO ☐ YES

If yes, list case number(s):

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒ NO ☐ YES

If yes, list case number(s):

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)
☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County, CA | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Chester, PA |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**NOTE: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County, CA | |

*Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** [signature] DATE: February 26/2014

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge __Cormac J. Carney__ and the assigned Magistrate Judge is __Douglas F. McCormick__.

The case number on all documents filed with the Court should read as follows:

**SACV14-00278 CJC (DFMx)**

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

February 26, 2014                            By   Lori Wagers
Date                                              Deputy Clerk

---

NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

| ☐ Western Division | ☒ Southern Division | ☐ Eastern Division |
| 312 N. Spring Street, G-8 | 411 West Fourth St., Ste 1053 | 3470 Twelfth Street, Room 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701 | Riverside, CA 92501 |

**Failure to file at the proper location will result in your documents being returned to you.**

---

CV-18 (08/13)                NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES